IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

TYRONE D. GILES                                                    PLAINTIFF

v.                             Civil No. 4:17-cv-04094

OFFICER SHOUMAKER, Miller
County Detention Center (MCDC);
OFFICER EDWARDS, MCDC;
SERGEANT C. WADDELL, Maintenance,
MCDC; and CORPORAL HANNING,
Administration, MCDC                                          DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This is a civil rights action filed *pro* se by Plaintiff Tyrone D. Giles under 42 U.S.C. § 1983. Before the Court is a Motion for Summary Judgment filed by Defendants Officer Shoumaker, Officer Edwards, Sergeant Waddell, and Corporal Hanning. (ECF No. 39). Plaintiff has a filed a Response. (ECF No. 43). The Court finds this matter ripe for consideration.

**I. BACKGROUND**

Plaintiff's claims in this action arise from alleged incidents that occurred in 2017 while he was incarcerated in the Miller County Detention Center ("MCDC") in Texarkana, Arkansas.[1] Viewed in the light most favorable to Plaintiff, the relevant facts are as follows.

Plaintiff was booked into the MCDC on June 12, 2017. (ECF No. 41-2). On July 24, 2017, Plaintiff was found guilty of a D9 infraction—possession of an item not authorized for retention—and he was placed in Max-D Cell 903. (ECF No. 41-5, pp. 1-3). On August 18, 2017, Plaintiff submitted an Inmate Maintenance Request, stating "[t]he water in Max-D 903 does not work and only one side works but even that doesn't come out properly. We cannot drink water at night[.]" (ECF No. 41-3). Defendant Hanning responded three days later, stating that he would "look at it asap." *Id.*

---
[1] Plaintiff remains incarcerated in the MCDC to date.

On September 20, 2017, Plaintiff submitted three Inmate Maintenance Requests. In the first two requests, Plaintiff states, "[I'm] trying to see if someone can come and fix my water. Its been down for a while and the officers don't like to let me get water when its not working." (ECF No. 41-3, pp. 3-4). In his third request, Plaintiff states in relevant part:

> I have been locked down for 7 days for something one inmate did. All my rights and privileges have been taken from me. My visit, [commissary], and water. My water [does] not work properly and when I ask to get water I get a no from staff. This is [unconstitutional] and against the law[.]

(ECF No. 41-3, p. 5). Plaintiff asserts that when he asked for water, Defendants Shoumaker and Edwards:

> would tell me to 'Shut the Hell up about water' or they would lock me up in the 'Hole'. They would say they don't care if I was dehydrating I shouldn't have gotten locked up out of fear of being locked up I would have to remain quiet and go without water[.]

(ECF No. 1, p. 6). On September 25, 2017, Defendant Hanning repaired the water problems in Plaintiff's cell. (ECF No. 43, p. 1).

Plaintiff filed his Complaint on October 23, 2017, against Defendants Shoumaker, Edwards, Waddell, and Hanning. Plaintif claims he was subjected to unlawful conditions of confinement when he was "put in a room with no running water." Plaintiff asserts that he:

> informed every officer about my problem and wrote the proper paper work to [people] but It didn't get handled. I was on a 23 and 1 hour lockdown for almost 2 [weeks] and was refused my breaks to get water. Being dehydrated led me to not be able to sleep and to lash out and get in trouble . . . These officers also informed me they didn't care that I didn't have water. I was laughed at and disrespected when I said anything about my problem . . . my rights to running water [were taken], my right to hydrate myself in a timely manner[.]

(ECF No. 1, p. 4). Plaintiff sues Defendants in both their individual and official capacities and seeks compensatory and punitive damages. He also asks for the "firing or suspension of the officers who didn't perform their jobs properly". *Id.* at p. 7.

On July 11, 2018, Defendants Shoumaker, Edwards, Waddell, and Hanning filed the instant motion. Defendants argue they are entitled to summary judgment because: (1) Plaintiff was not subjected to unconstitutional conditions of confinement; (2) verbal harassment or comments do not rise to a constitutional injury; (3) Defendants are entitled to qualified immunity; and (4) there is no basis for official capacity liability. (ECF No. 39).

## II. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Comm. v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id*. (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

# III. DISCUSSION

## A. Verbal Harassment

Plaintiff claims that Defendants harassed him when they "laughed at him", told "him to shut the hell up", and "disrespected him" when he asked for water. (ECF No. 1, pp. 4, 6).

The law on this issue is clear. "Verbal threats do not constitute a constitutional violation." *Martin v. Sargent*, 780 F.2d 1334, 1339 (8th Cir. 1985). Similarly, taunts, name calling, and the use of offensive language does not state a claim of constitutional dimension. *McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993) (inmate's claims of general harassment and of verbal harassment were not actionable under section 1983); *O'Donnell v. Thomas*, 826 F.2d 788, 790 (8th Cir. 1987) (verbal threats and abuse by jail official did not rise to the level of a constitutional violation).

Accordingly, Defendants are entitled to summary judgment on Plaintiff's verbal harassment claim.

## B. Official Capacity Claims

As noted above, Plaintiff has sued Defendants Shoumaker, Edwards, Waddell, and Hanning in their official capacities. Official capacity claims are "functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). In other words, Plaintiff's official capacity claims against Defendants are treated as claims against Miller County. *See Murray v. Lene*, 595 F.3d 868, 873 (8th Cir. 2010).

"[I]t is well established that a municipality [or county] cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013). To establish Miller County's liability under section 1983 a "plaintiff must show that a constitutional violation was committed pursuant to an official custom,

policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009) (citation omitted).

Here, Plaintiff has failed to produce any summary judgment evidence of a policy, practice, or custom of Miller County that contributed to the alleged violation of Plaintiff's constitutional rights. Accordingly, Plaintiff's official capacity claims fail as a matter of law.

**C. Conditions of Confinement**

Plaintiff alleges that he was subjected to unlawful conditions of confinement when he was put in a cell without running water for a month and "was on a 23 and 1 hour lockdown for almost 2 [weeks] and was refused my breaks to get water". (ECF No. 1, p. 4).

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 851 (1998) (citation omitted). The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The Eighth Amendment forbids conditions that involve the "wanton and unnecessary infliction of pain," or are "grossly disproportionate to the severity of the crime." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

A prisoner alleging an Eighth Amendment violation must prove both an objective and subjective element. *See Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The defendant's conduct must objectively rise to the level of a constitutional violation by depriving the plaintiff of the minimal civilized measure of life's necessities" and "must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner." *Id*. at 875 (citations and internal quotation marks omitted). Deliberate indifference is established when the plaintiff shows "the defendant was substantially aware

5

of but disregarded an excessive risk to inmate health or safety. *Id*. However, courts are not concerned with *de minimis* levels of imposition on inmates. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979).

Access to a sufficient quality and quantity of water for drinking is, of course, a minimal life necessity. *See Scott v. Carpenter*, 24 Fed. Appx. 645, 647 (8th Cir. 2001) (unpublished). However, "[n]othing in the Constitution requires that each prisoner be provided with clean, cold, warm, or any other form of running water in his cell[.]" *See Jelinek v. Roth*, 1994 WL 447266, *2 (7th Cir. Aug. 19, 1994) (plumbing in cell that produced only water contaminated with rust that was undrinkable and unsuitable for bathing does not implicate the Eighth Amendment); *see also Smith v. Copeland*, 892 F. Supp. 1218, 1230 (E.D. Mo. 1995) (turning off water in a cell except for brief periods to flush the toilet, and providing drinking water with each meal did "not deprive plaintiff of minimally necessary drinking water") *aff'd*, 87 F.3d 265 (8th Cir. 1996).

Although Plaintiff has no constitutional right to running water in his cell, Defendants have not addressed Plaintiff's claim that he was repeatedly denied water during his breaks while being held on 23-hour lockdown. Defendants have not provided any evidence, by affidavit or otherwise, to show Plaintiff was provided the minimally necessary drinking water during the time in question.[2] Moreover, Plaintiff alleges Defendants laughed at him and told him to "shut the hell up" when he asked about water. Construing the facts in the light most favorable to Plaintiff, the Court finds there is a genuine issue of disputed fact as to whether Defendants were deliberately indifferent to Plaintiff's health and safety by denying him water. Accordingly, Defendants' motion for summary judgment on this claim is denied.

---

[2] The Court notes that Defendants did provide an affidavit from Al Landreth, the classification administrator at the MCDC, in which he states MCDC inmates shall not be denied regular meal services as a form of disciplinary measures. (ECF No. 41-1, p. 2). However, the affidavit does not specifically address what "regular meal services" includes or if and when these services were provided to Plaintiff during the two weeks he was in lockdown.

### D. Qualified Immunity

Defendants argue they are entitled to qualified immunity. When a defendant asserts qualified immunity at the summary judgment stage, the plaintiff must produce evidence sufficient to create a genuine issue of fact regarding whether the defendant violated clearly established law. *Johnson v. Fankell*, 520 U.S. 911, 915 (1997). Qualified immunity "is an *immunity from suit* rather than merely a defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in original). It entitles an individual to avoid the burdens of litigation and "is effectively lost if a case is erroneously permitted to go to trial." *Id.* Accordingly, it is important that the question of qualified immunity be resolved as early as possible in the proceedings. *O'Neil v. City of Iowa City*, 496 F.3d 915, 917 (8th Cir. 2007) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)); *Schatz Family ex rel. Schatz v. Gierer*, 346 F.3d 1157, 1160 (8th Cir. 2003).

Determining whether a defendant is entitled to qualified immunity requires a two-step inquiry. *Jones v. McNeese*, 675 F.3d 1158, 1161 (8th Cir. 2012). First, the court must determine whether the facts demonstrate a deprivation of a constitutional right. *Id.* (citing *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010)). If so, the court must decide whether the implicated right was clearly established at the time of the deprivation. *Id.* To determine if Plaintiff's right was clearly established at the time of the alleged deprivation, the Court "must . . . examine the information possessed by the governmental official accused of wrongdoing in order to determine whether, given the facts known to the official at the time, a reasonable government official would have known that his actions violated the law." *Langford v. Norris*, 614 F.3d 445, 461 (8th Cir. 2010). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of preexisting law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). In other words, the Court must ask whether the

law at the time of the events in question gave the officers "fair warning" that their conduct was unconstitutional. *Hope v. Pelzer*, 536 U.S. 730 (2002).

As previously stated, the facts when viewed in a light most favorable to Plaintiff demonstrate that there is a question of fact regarding whether Plaintiff's constitutional rights were violated when the Defendants denied Plaintiff water. Accordingly, the first prong of the qualified immunity analysis is satisfied. As to the second prong, there is no question that in August and September of 2017, the law clearly established that an inmate has a constitutional right to sufficient quality and quantity of water for drinking. *See Carpenter*, 24 Fed. App'x at 647. Therefore, Defendants are not entitled to qualified immunity regarding Plaintiff's claim that he was denied water.

## IV. CONCLUSION

For the reasons stated above, the Court finds that Defendants' Motion for Summary Judgment (ECF No. 39) should be and hereby is **GRANTED IN PART** and **DENIED IN PART**. Summary judgment is granted as to Plaintiff's official capacity claims and claims for verbal harassment. Therefore, those claims are **DISMISSED WITH PREJUDICE**. However, summary judgment as to Plaintiff's claim regarding denial of water is denied and the claim remains for trial. However, Defendants are invited to file a second motion for summary judgment within thirty (30) days of the date of this Memorandum Opinion and Order to more fully address Plaintiff's claim that he was denied water during the period he was in lockdown.

**IT IS SO ORDERED**, this 6th day of September, 2018.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge